Yolonda B. WILLIAMS, Plaintiff,

v.

KANSAS GAS AND ELECTRIC COMPANY, Defendant.

Civ. A. No. 89–1440–T.

United States District Court, D. Kansas.

Oct. 8, 1992.

Yolonda B. Williams, pro se.

Mark A. Vining, Western Resources, Inc., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the defendant's motion for summary judgment. Doc. 28. Plaintiff, proceeding pro se, brings this action alleging discrimination in employment.

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to estab-

lish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim. Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials contained in the nonmoving party's pleadings, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513.

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of the finder of fact, not the functions of the judge when ruling on a motion for summary judgment. The evidence of the nonmoving party is to be believed. All justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 255, 106 S.Ct. at 2513.

The relevant facts are as follows. The court notes that most of the underlying facts are not in dispute. The plaintiff does disagree with the significance of certain factual events.

Plaintiff, Yolonda B. Williams, is a black female. Plaintiff was employed with defendant KG & E as a steno-clerk beginning June 29, 1976. Her only job location during her employment with KG & E was at the Murray Gill Steam Electric Station, 55th Street and South Hoover Road, Wichita, Kansas.

The steno-clerk position at a power plant reports to the Plant Superintendent through the Plant Office Supervisor (Plant Clerk). The duties and responsibilities of this position are clerical in nature and include completing certain reports, typing, filing, telephone reception, and other clerical related duties as may be assigned by her supervisors. Plaintiff states that this fact is disputed, but the matters she sets forth demonstrate no genuine controversy. Plaintiff notes that during her ten year tenure with KG & E, her immediate supervisor was Doyle Switzer. Plaintiff adds some further detail to her job duties (daily/monthly/annual reports) and that she was available for other clerical duties that might be assigned.

At the time of her employment plaintiff was supervised by Doyle Switzer, the Plant Office Supervisor, and Art Wood, the Plant Superintendent. Plaintiff states that this fact is disputed, but she merely adds that Art Wood was the Plant Superintendent at Gill Station at the beginning of plaintiff's employment on June 29, 1976, through approximately 1978. During the course of her employment, plaintiff's immediate supervisor was always Doyle Switzer. The Plant Superintendent changed several times during plaintiff's tenure at Murray Gill. The last change during her employment was at the end of January 1985, when Jim Wishart assumed that position.

Plaintiff was employed with KG & E until September 25, 1986. On September 25, 1986, plaintiff left her employment with KG & E. The parties disagree as to whether this was a voluntary resignation or a constructive discharge.

During the course of her ten years of employment with KG & E, plaintiff maintained the title of steno-clerk. She began her employment at Step 1 of Grade 5. She

was promoted to Step 2 on January 12, 1977, and to Step 3 on January 12, 1978. On both occasions, it was noted that plaintiff was meeting expected job performance requirements. From January 12, 1978 until her resignation in September 1986, plaintiff was at the top of the job value range of her job classification pursuant to KG & E's Wage Administration Program. Plaintiff also received other general wage increases provided to personnel covered by the Wage Administration Program. At the time of her initial employment, plaintiff was paid at the rate of $670 per month. When she resigned in September 1986, plaintiff's rate of pay was $1,587 per month.

Prior to June 1986, KG & E did not have a formal system for employees covered by the Wage Administration Program to receive notice of job openings and request transfers to those jobs. Plaintiff has attempted to controvert this statement, stating, "From 1976 through 1986, the span of Plaintiff's employment, Defendant's procedures were the formal policies regarding notification of job openings and handling of transfer requests. This policy varied from updating an annually submitted Request for Transfer to submitting a separate Request for Transfer for each job vacancy. Defendant's varying policies are noted on Defendant's replies to Plaintiff regarding the filling of the vacancies." From an examination of Plaintiff's Exh. E–1 through E–33, it is unclear as to the nature and extent of any formal system of employee notice of job openings. It is obvious that plaintiff was aware of certain openings, because she requested transfers to specific positions on a number of occasions. It appears, however, that notifying employees of openings and processing transfer requests were handled on an informal basis.

In January 1986, a system for announcing job openings through a company publication, *update*, was implemented, and employees were able to submit requests on specific openings as they became available. Plaintiff submitted numerous job transfer requests and was interviewed by the hiring supervisors on several occasions as a result of these requests, but was never selected as a candidate to fill an open position.

Plaintiff has attempted to controvert this statement of fact, stating, "Prior to October, 1984, Requests for Transfer were to be submitted separately for each job opening. Plaintiff had approximately four interviews throughout her seven years of transfer efforts." The matters relied upon by plaintiff (Doc. 51, plaintiff's affidavit and Exh. E–4) do not support her first allegation regarding the requirement of separate requests for transfer for each job opening. Exhibit E–4, an interoffice memo to plaintiff from Rob Southern dated October 17, 1984, provides in relevant part, "The job opening for which you were considered has now been filled. We will continue to keep you notified as to any other openings in which you may have expressed an interest or may be qualified. I should remind you, however, that a transfer request on file for one year is no longer valid." Doc. 51, Exh. E–4. Rather than indicating a requirement that the applicant submit a separate request for transfer for each job opening, this memo indicates that one request for transfer per year was all that was necessary for consideration for job openings. Regarding plaintiff's second allegation, it appears that plaintiff was interviewed on at least three occasions. Doc. 51, Exhs. E–20, E–26, E–27.

The hiring supervisors interviewing plaintiff reported that she was not selected because of her communication style during the interview. She was perceived as being defensive. Plaintiff has attempted to controvert this statement, stating "In March, 1986, in a meeting with Ron Holt (a top administrator in Defendant's Human Resource Department) was the first time Plaintiff was ever informed that she had a communications problem and that was why no transfer had occurred. Mr. Holt would not identify the supervisor(s) he claimed made such statment(s) [sic] to him." Be that as it may, the reason expressed to plaintiff by Holt was the perceived communication problem.

On January 27, 1985, Jim Wishart assumed the duties of Plant Superintendent at the Murray Gill Steam Electric Station. He was responsible for the supervision of

approximately 48 employees at the Plant. He discovered that approximately 30 to 35 had not received timely or yearly evaluations. He established a goal that all personnel working under his supervision would receive a performance evaluation and review within the first twelve months of his assuming the position of Plant Superintendent. This was announced to plant personnel by Wishart upon his taking charge of the Plant in 1985. Plaintiff has admitted that she has no knowledge of Wishart's intention or announcement to conduct job performance evaluations.

On February 4, 1986, Jim Wishart and Doyle Switzer conducted a performance interview with plaintiff, using a KG & E Performance Appraisal Form jointly prepared by them and dated January 30, 1986. The overall job performance evaluation received by plaintiff indicated that plaintiff's job performance was below expected performance levels. Specifically, the reasons given for the below expected performance ratings were:

1—Plans and Organizes: Employee does have the ability to do proficient work in this job classification. Planning of job functions at times does not exhibit awareness of the interaction of office activities with other vital areas. Unless specifically instructed, items awaiting typing are not completed in a timely manner.

2—Meets Position/Department Objectives: Meets the letter of job responsibilities, except in the area of substituting for Plant Office Supervisor, but performance can be sporadic. Routine jobs such as completing the daily 3020 may vary from a couple of hours to a full day. Too much time is spent on personal business, i.e. phone calls. Attendance record is poor.

3—Develops (Has Developed) Skills and Knowledge: Very proficient on 10–key calculator and can be good typist. Has not shown the skills nor desire to fill in for or work with the Plant Officer Supervisor on budget preparation, time sheets, or other functions.

4—Follows Self Development Program: Employee is following a commendable development program via college course enrollment, but the direction appears to be toward the fulfillment of personal goals rather than development toward advancement within our Company.

5—Develops and Maintains Relationships: A very private person. Has never shown any interest in other plant functions that are occurring. Does not exhibit a willing and helpful attitude to others, but rather remains cool and impersonal to all business associates.

Doc. 31, Exh. A. The form includes six suggestions for improved performance:

1. Strive to project a more positive image to those you come in contact with at work.

2. Handle requests from Company personnel (example—request for forms) in a positive helpful manner.

3. When answering and forwarding phone calls, project a friendly and helpful attitude.

4. Become involved and take part in the total plant office operation.

5. Spend less time on personal business, specifically phone calls.

6. Attendance needs to improve.

Doc. 31, Exh. A. Plaintiff has responded to this statement of fact with certain of her own opinions (e.g., that Wishart was abusive); however, plaintiff has not controverted that she received the evaluation or its contents.

On or about September 2, 1986, plaintiff's job performance was again reviewed by Jim Wishart. At a performance interview attended by plaintiff, Jim Wishart, and Connie Abrams, a representative of the Human Resources Department, plaintiff was presented with the KG & E Job Performance Appraisal dated August 25, 1986. Again, the evaluation indicated that plaintiff's performance was below that expected for her position. Specifically, the evaluation provided the following reasons for the below expected performance rating:

1—Plans and Organizes: The employee has the skills to be proficient in this job classification but does not plan nor organize to accomplish job functions in a

timely manner. Handles the position as though it were completely isolated from other office/plant functions. Even when deadlines are furnished typing and other duties are not finished until the last possible minute.

2—Meets Position/Department Objectives: Performance and accuracy of tasks are sporadic. Routine jobs such as the daily 3020 may vary from a few hours to a full day. Spends excessive time on personal business, (i.e. phone calls). Attendance record is very poor with many instances of personal illness and time away from work for personal business.

3—Develops (Has Developed) Skills and Knowledge: Possesses the minimum required skills to accomplish the duties of the present classification, but has exhibited no desire or willingness to improve these skills. Is not cognizant of other plant activities which impact her routine job functions.

4—Follows Self Development Program: Employee has not demonstrated a self development program geared toward advancement. Offers of development assistance have been ignored, specifically in the area of interpersonal communication improvement.

5—Develops and Maintains Relationships: Employee isolates herself from virtually all other employees and presents a cold and impersonal manner to other outside business contacts. Employee appears to avoid interpersonal business communication with all employees except when unavoidable. Projects a negative image to all business contacts based on various and numerous comments from outside plant/Company.

Doc. 31, Exh. C. Again, the evaluation included suggestions for improved job performance:

1. Must develop and project a more positive and courteous attitude toward fellow employees and outside business contacts.

2. Excessive time spent on personal business activities, specifically phone calls, must be curtailed.

3. Strive to improve interpersonal communicative skills.

4. Attendance record must improve.

5. Institute a self development program directed toward improving job proficiency and acquisition of skills required for progression to a higher level job.

6. Be aware of other plant activities and their impact on the clerical duties.

Doc. 31, Exh. C. Plaintiff has responded that this evaluation was even more disparaging of plaintiff than the previous one, and was the result of collusion among various KG & E personnel.

At the evaluation interview on September 2, 1986, plaintiff was also presented with a disciplinary letter from Plant Superintendent Wishart. The letter provides in pertinent part:

During your annual Job Performance Appraisal in February several areas of performance deficiency were identified. At that time specific suggestions for accomplishing the needed improvement were given. In the six month period since the February review, no significant performance improvement has occurred.

It was noted that a more helpful and courteous attitude must be projected to those you communicate with as a part of your job responsibilities, specifically when answering phone calls to the plant and gate entry requests. The manner in which these duties are being carried out continues to project an abrupt and rude image. Time spent on personal business has shown no reduction. Many hours are wasted by you each week on prolonged personal telephone calls. Numerous instances of time away from work to attend to personal business have also occured [sic]. The 1986 time cards indicate eight occasions where you have been absent from work without pay. Your use of Sickness and Injury Allowance remains well above the company average with nine separate incidents totaling 68 hours away from work during the first seven months of 1986.

At the February appraisal, numerous offers of help and assistance were made

by Management toward providing you needed skills improvement and development. These offers were predicated upon a more timely completion of your routine job tasks, such as completion of the Daily Operating Report, and your notification of time available for training to Mr. Switzer or myself. During the past six months you have not chosen to accept these offers of assistance, but rather have continued to utilize the routine tasks to fill up your work day.

Offers of help through the Employee Assistance Program have been rejected, even though KG & E has volunteered to cover the expense of the recommended Communications/Interpersonal Skills Training. The need for this training can not be over-emphasized, as the deficiency of skill in this area has affected all the phases of your job responsibilities and will continue to do so until this problem is addressed.

The continuation of substandard performance is intolerable, especially by an employee who has been in a position for ten years. Significant improvement in the areas identified below must occur immediately for you to continue employment with KG & E.

1. Time spent on personal phone calls must cease, other than verifiable emergencies.

2. Absences from the plant during working hours to attend to personal business must stop.

3. Use of Sickness and Injury Allowance must be reduced to an acceptable level.

4. Incoming telephone calls and gate entry requests must be handled in a more helpful and courteous manner.

5. To assist in improvement, you must participate in the Communications/Interpersonal Skills Training recommended by the Employee Assistance Program.

6. Work assignments given are to be completed in a timely manner so as to allow necessary time for corrections, copying, and routing before the established deadline.

7. You must develop your proficiency in the Steno–Clerk position to the level where you can fulfill all of the functions of the job, including substituting for the Plant Office Supervisor during his absence.

. . . .

The specific items listed above must be corrected within the next 90 days. To ensure that you are progressing, we will schedule a review with you at 30 day intervals. At each review interval we expect to see noticable [sic] improvement. You are expected to take whatever steps are necessary to correct the identified deficiency areas to continue your employment.

Doc. 31, Exh. D. Plaintiff admits that she received this document.

Defendant asserts that at the time of her resignation in September 1986, plaintiff was not adequately performing her job duties as Steno–Clerk I. Plaintiff has responded that she was performing her job adequately. This fact is in dispute.

On or about March 3, 1986, plaintiff met with Naomi Isenbart–Strong and Ron Holt at KG & E's General Office. They discussed the Job Performance Evaluation plaintiff received in February 1986. During that discussion, plaintiff was told that her supervisors had been making efforts to contact other supervisors where openings were available and to encourage them to give her application consideration. Also, plaintiff was informed by the Personnel Department employees that her efforts to transfer to other positions within KG & E had been damaged by her interpersonal communication abilities and her attendance problems. It was suggested that plaintiff contact personnel from EMPAC, an employee assistance program, to seek possible solutions to her communication problems. Plaintiff has responded that Isenbart–Strong attended the meeting at Holt's preference and that the evaluation was not the "focal point" of the meeting. The facts as alleged by defendant are not genuinely controverted.

In March 1986, an assessment by EMPAC indicated that plaintiff had an inter-

personal communication skills problem that could be helped with training. Plaintiff's supervisors agreed to allow plaintiff work time to participate in the training and also agreed to bear the expense of such training. Plaintiff was referred to Associated Personnel Technicians (APT) for the training. Plaintiff does not dispute that these events occurred; she does, however, disagree as to the meaning and importance of these events. As discussed below, plaintiff's position is that the alleged communications problem was a pretext for racial discrimination.

On March 20, 1986, a meeting was held with plaintiff, Ron Holt, Jim Wishart, and Paul Zink. At that meeting, plaintiff informed her supervisors that she was not going to participate in the APT training. Plaintiff asserts that she had "well-founded doubts about there being any objectivity to her in the proposal" that she attend the APT training sessions.

From time to time during his tenure as Plant Superintendent, Wishart informed plaintiff that whenever she found she had extra time to let him know and he would provide her with additional job responsibilities and duties for which she had been asking. During the 21 months of his supervision over her, plaintiff never asked Wishart for additional work or responsibility. Plaintiff has countered that it was Switzer and Wishart who failed to follow their stated intent to expand her job activities.

Plaintiff intentionally stretched some of her routine jobs to take more time than was actually required. Plaintiff admits that at the February 4, 1986 review, she did speak of occasions of not being busy throughout the day and her desire to be busy. Plaintiff again asserts that Switzer and Wishart failed to follow through in their stated intent to expand her job duties.

Plaintiff was informed on September 2, 1986 that she would be terminated if she did not meet the necessary minimum job requirements within the next 90 days. Plaintiff does not dispute the receipt of the letter of September 2, 1986, but does dispute its meaning and significance.

As noted in the performance review (and allegedly because of her poor performance), plaintiff was required, as a condition of her employment, to participate in Communications/Interpersonal Skills Training conducted by Dick Fisher of Associated Personnel Technicians, Inc. The training would be held during normal working hours and would be paid for by KG & E. Plaintiff attended three of the sessions before she resigned from her position at KG & E. She did not attend further sessions after her resignation. Plaintiff does not dispute that these events occurred; however she does allege that there was no "objectivity towards Plaintiff in her attendance."

Plaintiff was not denied the opportunity to apply for job transfers or promotions, with the exception perhaps of the period of time following June 30, 1986, when the defendant enacted a policy limiting transfer requests to three per twelve month period.

During the course of plaintiff's employment with KG & E, other blacks, other females, and other black females received promotions or transfers within the company. KG & E does not have, nor does it maintain a policy or practice or denying promotions or transfers to blacks, females, or black females. As the plaintiff notes in her response brief, however, she is not pursuing a disparate impact theory.

Plaintiff was interviewed for a position in the Production Department Budget Division. The interview was with Lucille Gilkey, a black female who was the hiring supervisor for this new area. Plaintiff was not selected for the position. Plaintiff alleges, however, that during this interview, Gilkey stated to plaintiff, "I've heard several things about you already, but that won't affect my decision." Plaintiff further alleges that in the late spring of 1986 (it is not clear whether this was the occasion of the interview), Gilkey also told her that employers are often apprehensive about black employees and are particularly apprehensive about black females who, if assertive, are deemed as being too aggressive.

A fact question is presented as to whether plaintiff voluntarily resigned or was con-

structively discharged. Plaintiff testified in her deposition that she was bored in her job and that she did not wish to attend the Communications/Interpersonal Skills Training course.

Plaintiff asserts that she raised the issue of racial discrimination during two visits to KG & E's Human Resource Department in 1982 and 1986.

Plaintiff did not like her supervisor, Doyle Switzer.

Plaintiff did not follow up with any of the persons interviewing her for promotions or transfers to discover the reason why she had not been selected, the factors or criteria used in making the selection, or how she could better prepare herself for future transfers or promotions within the company. Plaintiff responds that she had faith that opportunities existed for her in light of the defendant's ongoing clerical vacancies.

On or about March 3, 1987, plaintiff filed a complaint with the State of Kansas Commission on Civil Rights (KCCR) alleging that she had been discriminated against on the basis of race. Plaintiff did not allege sex discrimination in documents with the KCCR or EEOC. Plaintiff did not allege in documents filed with the KCCR or EEOC that a racially offensive work environment existed.

On April 28, 1987, a letter was issued by the Wichita Office Supervisor of the KCCR indicating that plaintiff had voluntarily withdrawn her complaint and that her case was being administratively closed effective that date. On or about September 22, 1987, a Right to Sue letter was issued by the EEOC, notifying plaintiff that she had 90 days from receipt in which to file her lawsuit. Plaintiff asserts that she received the Right to Sue letter on or about September 25, 1987. Plaintiff's application to proceed in forma pauperis and proposed complaint were lodged with the court on or about December 24, 1987. Plaintiff's original action was voluntarily dismissed and refiled in 1989.

KG & E does not have or maintain a policy or practice that requires an employee to be transferred or promoted on re-quest, or that provides transfers or promotions based on seniority. As plaintiff points out, this leaves KG & E's supervisors with much subjective discretion in transfers and promotions.

Plaintiff has admitted that all conduct by Doyle Switzer, Jim Wishart, Ron Holt and Paul Zink which allegedly violated her civil rights and equal employment opportunity occurred during the course and scope of their employment duties.

In its motion for summary judgment, defendant argues that (1) plaintiff failed to exhaust her administrative remedies on her claim of sex discrimination; (2) plaintiff fails to state a claim in alleging a violation of 42 U.S.C. §§ 1985 and 1986; (3) plaintiff cannot demonstrate her claim of racially hostile environment; (4) section 1981 fails to provide a cause of action for sexually or racially offensive work environment or a cause of action based on the terms, conditions, and privileges of a person's employment; and (5) no genuine issue of material fact exists on plaintiff's claim of race discrimination under Title VII or section 1981.

## I. Exhaustion of Remedies

■ Defendant argues that plaintiff failed to exhaust her Title VII administrative remedies regarding her claim of sex discrimination and that it is therefore entitled to summary judgment on plaintiff's claims under Title VII regarding sex discrimination.

In her complaint filed with the Kansas Commission on Civil Rights, plaintiff claimed that she was discriminated against because of her race and in retaliation for opposing unlawful practices. Plaintiff alleged that she was denied transfers because of her race, and that she received two unjust performance evaluations and was required to attend certain training sessions because of her race and in retaliation for her opposition to unlawful employment practices. Doc. 31, Exh. F. Plaintiff's charge does not include any allegation that her gender played any role in the alleged discriminatory treatment.

■ Exhaustion of administrative remedies is a prerequisite to filing a Title VII action in federal court. *Gulley v. Orr*, 905 F.2d 1383, 1384 (10th Cir.1990). However, "[w]hen an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonable related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." *Brown v. Hartshorne Public School Dist. No. 1*, 864 F.2d 680, 682 (10th Cir.1988) (quoting *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973)). Therefore, judicial relief may be sought without exhausting administrative remedies if the discrimination alleged is reasonably related to a charge already submitted to the EEOC. *Archuleta v. Colorado Department of Institutions*, 936 F.2d 483, 488 (10th Cir.1991) (citing *Brown v. Hartshorne Public School Dist. No. 1*, 864 F.2d 680, 682 (10th Cir.1988)).

The complaint filed by plaintiff with the EEOC generally alleged that plaintiff was discriminated against on the basis of her race and in retaliation for opposing unlawful practices, and there was no allegation that she was discriminated against on basis of her sex. Plaintiff's claim for discrimination on the basis of sex must be dismissed for her failure to exhaust administrative remedies. The claim of sex discrimination is not reasonably related to the charge of race discrimination submitted to the EEOC.

## II. Claims under Sections 1985 and 1986

In plaintiff's amended complaint she makes the following claim: "The Defendant, its agents, and employees in retaliation and conspiracy accorded disparate treatment to the Plaintiff because she was a black female and did cause injury to the Plaintiff by violation of Plaintiff's rights, guaranteed by United States' laws, to equality of protections, privileges, and immunities. Defendant's conduct and resultant constructive discharge of Plaintiff are in violation of 42 U.S.C.1985 attendant with violation of 42 U.S.C.1986." Doc. 3, ¶ 19.

Section 1985 provides in pertinent part: If two or more persons in any State or Territory conspire, ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, ...; in the case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Section 1985(3) creates no substantive rights, but merely provides a remedy for violations of the rights it designates. *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979).

To state a claim under section 1985(3), the plaintiff must allege that the defendants (1) conspired (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law, and (3) that one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy, (4) whereby another was injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States. *Novotny*, 442 U.S. at 372, 99 S.Ct. at 2349; *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971).

Section 1986 imposes liability upon "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [section 1985(3)], are about to be committed, and having power to prevent or aid in preventing the commis-

sion of the same, neglects or refuses to do so ..." 42 U.S.C. § 1986. Section 1986 thus imposes liability on any person who refuses to take positive action where the circumstances demand to prevent acts which give rise to a section 1985(3) conspiracy cause of action. *Drake v. City of Fort Collins*, 927 F.2d 1156, 1163 (10th Cir. 1991). The section 1986 claim fails if the section 1985(3) claim is insufficient. *Id.*

■ Plaintiff's allegations of conspiracy are set forth in full above. Plaintiff's vague allegations of conspiracy are insufficient to state a claim under 42 U.S.C. § 1985(3). There is only the vaguest allegation that a conspiracy existed involving only unnamed employees of the defendant. There is no allegation of any acts done in furtherance of the alleged conspiracy. The allegations of the complaint are not specific enough to provide a source, independent of Title VII, to support a section 1985(3) conspiracy claim. *See Drake v. City of Fort Collins*, 927 F.2d at 1163; *Novotny*, 442 U.S. 366, 99 S.Ct. 2345 (section 1985(3) may not be invoked to redress violations of Title VII). Finally, plaintiff has alleged that the defendant KG & E conspired with its agents and employees. As a general rule, a corporation cannot conspire with its own agents and employees. *E.g., Hull v. Cuyahoga Valley Board of Education*, 926 F.2d 505, 509 (6th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991). Plaintiff's claim under sections 1985 and 1986 must fail.

III. Hostile Environment

■ Defendant argues that plaintiff never raised the claim of hostile work environment in her EEOC complaint. As discussed above, plaintiff's EEOC complaint alleged that she had been discriminated against on the basis of race in the denial of transfers, in the receipt of two unsatisfactory evaluations, and in the requirement of attendance at training sessions. Plaintiff alleged that the denial of transfers, the two performance evaluations, and the required attendance at training sessions created such an offensive, hostile, and intolerable work environment that she felt compelled to resign her employment. Doc. 31, Exh. F. For the reasons set forth *supra* in Section I, the court holds that the Title VII claims of a racially hostile work environment and hostile work environment sexual harassment are barred by plaintiff's failure to exhaust her administrative remedies.

■ Further, as a factual matter, there is insufficient evidence to support plaintiff's claims of a hostile work environment. Plaintiff asserts a claim of racial harassment. However, plaintiff testified in her deposition that racial slurs were not used in her presence. Plaintiff's depo. at 33–34. Plaintiff alleged two occasions when Switzer allegedly made statements to another white male regarding blacks eating pork. Plaintiff alleged that she was present on these two occasions, which occurred on consecutive days. Plaintiff's affidavit, ¶ 14. Plaintiff does not mention when these two comments occurred during the ten year course of her employment with KG & E.

■ There are only a few instances documented in the record regarding use of racial epithets or comments. These were not directed at plaintiff, but she did overhear them. However, to establish a racially hostile work environment, the plaintiff must prove more than a few isolated instances of racial comments. *See Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412–13 (10th Cir.1987) (*Hicks I*). Casual comments or sporadic conversation are insufficient to state a claim under Title VII. *Id.; Payne v. General Motors Corp.*, 731 F.Supp. 1465, 1472 (D.Kan.1990). The evidence presented to the court demonstrates that KG & E did not maintain a work environment that was openly hostile to black employees. The matters before the court demonstrate that the racial comments which did occur were occasional, rather than a steady barrage.

■ Plaintiff also asserts a claim of hostile work environment sexual harassment. Hostile work environment harassment arises when sexual conduct unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive working environment.

*Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). For this type of sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Id.* at 67, 106 S.Ct. at 2405; *Hicks v. Gates Rubber Co.,* 928 F.2d 966, 972 (10th Cir.1991) (*Hicks II*); *Hicks I,* 833 F.2d at 1414.

▇ Plaintiff alleges that Switzer and other employees photocopied and shared sexually oriented comics. Plaintiff states in her response brief, Doc. 50, that she encountered Switzer's comics file in a desk drawer which was accessible to plaintiff. Plaintiff copied the contents of the file and has submitted these copies as Exhibit K. The cartoons are of a sexual nature and some demonstrate racist attitudes as well. However, by plaintiff's own admission, she merely happened upon the comics in Switzer's file. She was not forced to view such materials. The cartoons plaintiff provided were not displayed to plaintiff. She was not forced to view the comics (for example, there is no allegation that these offensive comics were displayed in the office, given to her or placed on her desk where she could not avoid them, etc.). She only ran across them while performing her job duties. The most that can be said is that the personnel who shared and copied these comics on company time exercised poor judgment (not to mention demonstrated poor taste in their choice of reading material). In the present case, the matters were not sufficiently severe or pervasive to be actionable.

Even upon aggregating the evidence of racial hostility with the evidence of sexual hostility, *see Hicks I,* 833 F.2d at 1416–17, the record fails to demonstrate a pervasive discriminatory atmosphere. Summary judgment shall be granted on the hostile environment claims.

## IV. Section 1981

Defendant argues that plaintiff's claims for sexually or racially offensive work environment or discrimination in the terms, conditions or privileges of employment are not cognizable under 42 U.S.C. § 1981. The court agrees that plaintiff's section 1981 claims regarding terms and conditions of employment are barred by *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

▇ In *Patterson,* the Supreme Court held that section 1981 prohibits racial discrimination in the making and enforcement of contracts. The court found that the language of section 1981 does not apply "to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." *Patterson,* 491 U.S. at 171, 109 S.Ct. at 2369. Claims based on terms and conditions of employment are not actionable under section 1981. *Id.* at 178–79, 109 S.Ct. at 2373–74. The *Patterson* holding is to be applied retroactively. *See Hill v. Goodyear Tire & Rubber, Inc.,* 918 F.2d 877, 880 (10th Cir.1990). The *Patterson* holding bars claims of racial harassment and the existence of a hostile work environment. *Id.*[1]

## V. Race Discrimination Claims

Plaintiff's claims under Title VII and section 1981 involve the denial of transfer requests, two allegedly unjust performance evaluations, and constructive discharge. The court shall address the section 1981 claims separately from the Title VII claims.

### A. Section 1981 Claims

▇ A claim for failure to transfer or promote is actionable under section 1981 if "the nature of the change in the position was such that it involved the opportunity to

---

1. Since the 1991 Civil Rights Act is not alleged as a basis for relief, the court need not address whether that statute is to have retroactive application. The Tenth Circuit has not yet ruled on the issue of the retroactive application of the 1991 Civil Rights Act. *See, e.g., Patrick v. Miller,* 953 F.2d 1240, 1251 n. 6 (10th Cir.1992). The court notes that the judges in this district have held that the 1991 Civil Rights Act is not to be applied retroactively. *See, e.g., Little v. Wichita Coca–Cola Bottling Co.,* No. 91–1205–B, 1992 WL 223758, 1992 U.S.Dist. LEXIS 13301 (Aug. 12, 1992) (citing cases from district).

enter into a new contract with the employer." *Patterson,* 491 U.S. at 185, 109 S.Ct. at 2377. The promotion must rise "to the level of an opportunity for a new and distinct relation between the employee and the employer." *Id.* Plaintiff was attempting to transfer to other clerical positions, some of which may have been promotions. However, plaintiff has not shown that these positions would have involved any increase in job duties, responsibilities, or pay. No new contract with the employer would have been created. The court finds as a matter of law that the transfers in question would not have created any new or distinct relation with KG & E. Accordingly, summary judgment on this claim under section 1981 is appropriate.

■ Plaintiff's allegations regarding the two performance evaluations and the required attendance at training sessions involve terms and conditions of her continued employment with KG & E (i.e., post-formation conduct), rather than the right to make or enforce contracts. Her section 1981 claim based on these allegations is thus barred by *Patterson. Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1387 (10th Cir.1991). A claim of discriminatory discharge is also barred by *Patterson. See Trujillo v. Grand Junction Regional Center,* 928 F.2d 973, 975–76 (10th Cir.1991). Thus, her claim for constructive discharge must fail. *Daemi,* 931 F.2d at 1386–87.

*B. Title VII Claims*

■ Under Title VII, to establish a prima facie case of disparate treatment from a denial of transfer, the plaintiff must demonstrate that (1) she applied for an available position; (2) she was qualified for an available position; and (3) she was rejected under circumstances which give rise to an inference of unlawful discrimination in that her failure to be transferred is more likely than not based on considerations of impermissible factors. *Payne v. General Motors Corp.,* 731 F.Supp. 1465, 1470 (D.Kan. 1990). If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason why the plaintiff was rejected or someone else preferred. If such a reason is offered, the plaintiff must demonstrate that the defendant's articulated reason is a mere pretext for unlawful discrimination. At all times, the overall burden of persuasion remains with the plaintiff. *Id.*

Defendant first argues that plaintiff cannot prove a prima facie case of racial discrimination. Defendant argues that plaintiff has no proof that race was a motivating factor. Defendant notes that plaintiff was never denied the opportunity to apply for transfers, and that other blacks and females had been promoted and transferred within KG & E. Defendant also notes that it has no policies or practices which mandated that blacks, females, and black females be treated differently from other employees.

■ The defendant's arguments here miss the point. The issue is not whether other blacks, other females, or other black females obtained certain transfers, but why plaintiff did not receive the transfers for which she applied. The overall number of minority or female employees who obtained promotions or transfers is irrelevant to this case. This case involves only the alleged disparate treatment of this plaintiff. It is not necessary that KG & E have racially discriminatory policies and rules for plaintiff to prove her case. The fact that plaintiff was allowed to request transfers is not dispositive. If plaintiff can prove that her transfer requests were denied because of her race, it does not matter that KG & E allowed her to submit transfer requests.

The court believes that plaintiff has set forth a prima facie case for the denial of promotions. Plaintiff applied for numerous positions within KG & E. Plaintiff apparently was qualified for the positions. However, plaintiff received only a few interviews and was not hired for any of the positions.

Assuming that plaintiff can establish a prima facie case, defendant asserts that it has articulated legitimate, nondiscriminatory reasons for plaintiff's failure to obtain a transfer. First, defendant asserts that plaintiff was inadequately performing her

duties as a steno-clerk. From the matters before the court, it does not appear that any of defendant's witnesses testified that poor job performance was the reason plaintiff was never transferred. Nor was this ever expressed to the plaintiff as a reason for her failure to obtain a promotion. Further, the alleged inadequacy of plaintiff's performance did not become an issue until 1986, after plaintiff had applied for and been denied a number of transfers.

As another legitimate, nondiscriminatory reason, defendant asserts that plaintiff was not hired because the interviewing supervisors did not like her attitude. According to Ron Holt, the Personnel Administrator for KG & E, certain unnamed supervisors stated that plaintiff was viewed as defensive and undesirable. Defendant also argues that plaintiff never followed up with any supervisor to learn why she had not been selected and what she could do to improve herself. Defendant has not, however, pointed to any requirement in the case law that an employee who suspects discrimination must ask her employer about the reasons behind the adverse employment decision.

Plaintiff counters that the defendant's proffered reason (her alleged defensive attitude) is merely a pretext for discrimination against blacks. Plaintiff argues that employers are frequently apprehensive in relating to black employees; that this is especially true regarding black female employees; that assertive behavior by black females is perceived as aggressive; and that these perceptions by employers can hamper the career opportunities for black females. Plaintiff alleges that a black female KG & E supervisor advised her that supervisors are often apprehensive about assertive conduct by black females. Plaintiff further alleges that Ron Holt, the manager of KG & E's Human Resources Department, made similar statements to her. If true, these statements by KG & E personnel could lend support to plaintiff's claim that the proffered reason is pretextual. The court believes that factual questions preclude summary judgment on the claim of discriminatory denial of transfers.

The defendant notes that plaintiff's employment search outside KG & E met with no success, and that the assessment by KG & E's consulting firm confirms that plaintiff has communication problems. Defendant concludes that this proves that the perceived communication and attitude problem was true. However, this must await proof at trial.

The requirement that plaintiff attend training sessions is connected to the attitude issue. If the perceived "attitude" and "communication" problem was really a racially motivated pretext, then the required training sessions could also be seen as discriminatory.

Prior to 1986, plaintiff had not received a performance evaluation in approximately nine years. According to plaintiff, she was adequately and competently performing her job. There is no way for the court to determine from the matters before it whether these two evaluations truly reflect the quality of plaintiff's job performance or whether they were the product of a racially discriminatory motive. Plaintiff asserts she was performing her job adequately, while the defendant asserts she was not. The court is unable to determine, without making credibility assessments, whether the plaintiff was performing her job adequately.

To establish a claim of constructive discharge under Title VII, an employee must demonstrate that the employer's discriminatory conduct produced working conditions that a reasonable person would view as intolerable. *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1386 (10th Cir.1991); *Hirschfeld v. New Mexico Corrections Dept.*, 916 F.2d 572, 580 (10th Cir.1990). Constructive discharge is a fact question. *Hirschfeld*, 916 F.2d at 1386.

The issue of the performance evaluations is linked with the constructive discharge issue, as well as being a separate claim of discrimination under Title VII. Plaintiff thought she was performing her job adequately. The February 1986 performance evaluation was the first time she heard otherwise. The September 1986 evaluation again stated that she was not performing

her job adequately. She was required to attend certain training sessions as a condition of employment. If the plaintiff was indeed performing her job adequately—which is a matter the court cannot resolve on a motion for summary judgment—the performance evaluations could have been devastating to the plaintiff. The court cannot conclude that a reasonable person in this situation would not have found the working conditions intolerable.

After considering all the matters presented, the court must conclude that fact questions preclude summary judgment as to plaintiff's claims of racial discrimination under Title VII. The court notes that no Pretrial Order has been entered. The issues for trial have been limited and framed by this opinion and order. This opinion and order shall serve as the final Pretrial Order. Trial will be to the court. The parties shall file their final witness and exhibit lists within thirty (30) days from the date of this order.

To summarize, the only claims remaining are the Title VII claims based on the allegedly racially motivated denial of transfers, issuance of the two performance evaluations, requirement of attendance at training sessions, and the corresponding claim for constructive discharge. Defendant's motion for summary judgment is granted as to the remainder of plaintiff's claims.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion for summary judgment (Doc. 28) is hereby granted in part and denied in part.

IT IS FURTHER ORDERED that the parties shall file their final witness and exhibit lists within thirty (30) days from the date of this order.