Janine R. COLTER, Plaintiff,

v.

DOBSKI & ASSOCIATES, INC. d/b/a McDonald's Restaurants, Defendant.

No. CIV.A.97–2672–GTV.

United States District Court, D. Kansas.

Jan. 27, 1999.

---

Alan V. Johnson, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, W. Thomas Stratton, Topeka, KS, for Janine R. Colter, plaintiff.

Patrick J. Doran, Laura E. Thompson, Christina M. Magee, Niewald, Waldeck & Brown, P.C., Kansas City, MO, Kevin J. Driscoll, Des Moines, IA, for Dobski & Associates, Inc. dba McDonald's Restaurants, defendants.

### MEMORANDUM AND ORDER

G. THOMAS VANBEBBER, Chief Judge.

Plaintiff Janine R. Colter brings this action alleging that defendant Dobski & Associates, Inc. d/b/a McDonald's Restaurants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 by discriminating against her based on her race and retaliating against her after she opposed the allegedly discriminatory activity. The case is before the court on defendant's motion (Doc. 30) for summary judgment, and plaintiff's motion (Doc. 42) to supplement her memorandum in opposition to defendant's motion for summary judgment. Because plaintiff's supplement will not affect the outcome of defendant's motion for summary judgment, plaintiff's motion to supplement is denied. For the reasons set forth below, defendant's motion for summary judgment is denied with respect to the Title VII claim for denial of a salary increase, and granted with respect to all other claims.

### I. Factual Background

The following facts are either uncontroverted or are based on evidence submitted with the summary judgment papers viewed in a light most favorable to the nonmoving party. Immaterial facts and facts not properly supported by the record are omitted.

During all relevant time periods in this case, defendant owned nine McDonald's restaurants in Northeast Kansas. Tom and Marilyn Dobski operated the restaurants. Plaintiff, an African–American, worked in the restaurant located on 23rd Street in Lawrence, Kansas ("the South Lawrence restaurant"). In September 1991, plaintiff began full-time employment as a salaried manager in the South Lawrence restaurant. Defendant promoted plaintiff to Head Restaurant Manager ("HRM") of the South Lawrence restaurant in November 1994.

The HRM has the overall responsibility for the entire restaurant, including meeting the goals for that restaurant, developing all of the employees in that restaurant, and using all of the management resources and support provided by defendant. The HRM also has the authority to discipline any employee under her management, including writing up the employee or recommending termination, probation, or suspension. Defendant attempts to provide each HRM with a quarterly review. Three times per year, the review focuses on various aspects of the HRM's performance. During the first quarter of each calendar year, each HRM receives a salary review for the prior year's overall performance.

From November 1994 through the end of 1995, Liz Campbell was plaintiff's immediate supervisor. In the first quarter of 1995, plaintiff received her 1994 salary review. Campbell gave plaintiff an "excellent" rating and an eight percent salary increase. The review was based on ten months as a first assistant manager and two months as an HRM. Plaintiff did not receive her quarterly review in April 1995, but she testified in her deposition that she would have received a "needs improvement" rating based on the restaurant's performance in several areas. In August 1995, Campbell conducted a quarterly review of plaintiff's location and rated plaintiff overall as "needs improvement but trending towards a good." All management employees, including plaintiff, received a $1,000 salary increase in August 1995.

In November 1995, Tom Dobski instructed Campbell to work with plaintiff to address several problems that plaintiff was experiencing as an HRM. Campbell, who had preceded plaintiff as the manager of the South Lawrence restaurant, reassumed part of the HRM duties there. In December 1995, Campbell again reviewed plaintiff's work. Campbell rated the restaurant as "needs improvement," but noted that plaintiff had made some improvements since the August review. Nevertheless, all managers, including plaintiff, received a bonus that month. Subsequently, Tom Dobski moved Campbell to another position in defendant's management. Beginning in January 1996, Michael Bates, a more experienced supervisor than Campbell, became plaintiff's direct supervisor.

In February 1996, plaintiff received her 1995 salary review from Bates. Bates testified in his deposition that the review was based on several factors and that ten performance goals used by defendant in 1995 were considered as guidelines. Plaintiff's restaurant received an "unsatisfactory" rating in six of the ten performance categories—transactions, profits after controllable costs, internal total customer satisfaction, people in management development program, average crew size, and crew turnover. Plaintiff received an overall performance rating of "needs improvement." Both Bates and Tom Dobski testified in their depositions that plaintiff did not receive a salary increase because she did not meet the performance levels necessary to achieve a "good" rating.

Plaintiff offered evidence that, in February 1996, Bates was involved in the salary review of five HRMs—plaintiff, Susan McKinzie, Katie James Harvey, Janet Donner, and Diana Summers. Plaintiff was the only one of the five to receive less than a "good" rating and no salary increase. At that time, plaintiff was the only member of a racial minority working as an HRM for defendant. Plaintiff also offered evidence that, in December 1995 and February 1996, she was evaluated based only on the following performance goals: (1) transactions, (2) profit after controllables, (3) sales, (4) internal customer satisfaction, (5) external customer satisfaction, and (6) crew turnover. Plaintiff offered documents showing that the non-minority managers underperformed in most or all of the performance categories and, nevertheless, each received a "good" rating and a salary increase. Plaintiff testified in her deposition that, after her disappointing review, she complained to Bobby Phelps, defendant's human resources director, that Bates was discriminating against her based on her race.

In January or February 1996, plaintiff complained to Bates that her assistant managers were undermining her authority in the South Lawrence restaurant. Bates suggested that he, plaintiff, Phelps, and the two assistants meet to address the problem. At

that meeting, the two assistants conceded that they did not always follow plaintiff's directions. Bates instructed the assistant managers that he expected them to follow plaintiff's directions.

On May 10, 1996, Bates ordered plaintiff to leave the restaurant for the day. Plaintiff did not receive any discipline or lose any pay as a result of this incident. The action arose after Bates arrived at the restaurant and found that the speed of service was not fast, there was not enough food prepared, the employees were not working as a team, and the overall atmosphere was unpleasant. On arrival at the restaurant, Bates immediately began preparing food. Following the morning rush, Bates met privately with plaintiff in the office. He asked plaintiff what caused the problem in the restaurant.[1] Bates suggested that plaintiff go home. Plaintiff denied that there was a problem and left the office. Bates followed plaintiff out of the office and, in front of several employees, again told her to go home.

Two days later, plaintiff resigned from the HRM position at the South Lawrence restaurant. Shortly after her resignation, plaintiff returned to the South Lawrence restaurant in the position of First Assistant Manager under then-HRM Diana Summers. Plaintiff and Summers agreed that plaintiff could return to assist Summers in acclimating herself to the restaurant and employees. Bates testified in his deposition that plaintiff told Bates that she would only work until August 1, 1996 because she was to begin attending beauty school at that time. Summers testified in her deposition that she understood that plaintiff would work as her assistant for approximately two to six months and would then leave to attend cosmetology school. Phelps also testified in his deposition that he understood that plaintiff was returning only for the summer months prior to starting beauty school. Plaintiff admits that she told Bates she would work only until August 1, 1996, but denies in her declaration that she told Bates, Summers, or Phelps that she was leaving to attend beauty school. Plaintiff

remained in that position until her final resignation in July 1996. Throughout that period, plaintiff's salary and benefits were not reduced from her previous HRM level.

On or about July 6, 1996, Bates contacted plaintiff at home, telling her that there was a product shortage and that she was responsible for getting the product into the restaurant immediately. Summers was on vacation and plaintiff was acting-HRM during her absence. Bates told plaintiff that, because she had ordered the product, she needed to retrieve it and bring it to the restaurant. The restaurant manager has primary responsibility to ensure that the restaurant is adequately stocked with product. The shift supervisor at the time, however, has immediate responsibility to get the product into the restaurant for that time period. That responsibility includes traveling to get product if necessary from another of defendant's restaurants. Summers testified in her deposition that she has previously called other managers in her restaurant, including Bates, to obtain product when the restaurant was running short, the need was immediate, and the shift supervisor could not leave the restaurant. Summers also testified in her deposition that if the person in charge of the restaurant cannot leave to remedy the shortage, it is not unusual to call someone off duty to get the product. Moreover, she testified that she would call whoever was in charge of ordering the product and, if problems occurred at the restaurant, it was typical for Michael Bates to call the HRM at home. Plaintiff admitted that, on previous occasions during her time as an HRM, she had been called at home.

On July 24, 1996, plaintiff again resigned from employment with defendant. Earlier that month, she provided verbal notice to Summers of her intent to resign, stating that she could not take anymore. Summers understood that plaintiff was referring to the stress and frustrations with the HRM position. Plaintiff's July 24, 1996 resignation letter is silent regarding her reasons for leaving. Plaintiff enrolled in the Topeka

---

**1.** Plaintiff testifies in her declaration that Bates used nonracial expletives during their conversation. The court, however, considers that fact to be immaterial because there is no harassment claim in this case and it does not tend to otherwise show adverse employment action here.

Community College of Cosmetology in August 1996.

## II. Summary Judgment Standards

Summary judgment is appropriate if the evidence presented by the parties demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue is "material" if it is essential to the proper disposition of the claim. *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). The court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion. *Id.*

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party will not bear the burden of persuasion at trial, that party "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671, 106 S.Ct. 2505 (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific evidence that creates a genuine issue of material fact left for trial. *Id.*

## III. Discussion

Plaintiff asserts three claims against defendant—race discrimination under Title VII, § 1981 retaliation in the terms and conditions of employment, and § 1981 retaliatory constructive discharge. Defendant requests summary judgment on each claim.

### A. Title VII Discrimination

In the pretrial order, plaintiff claims that defendant discriminated against her because of her race by denying her a salary increase in 1996, by refusing to support her efforts to discipline insubordinate employees, by ordering plaintiff to leave work for the rest of the day, and by calling her at home on her day off about a product shortage. Initially, plaintiff must establish a prima facie case of racial discrimination by showing that (1) she is a member of a racial minority, (2) she suffered an adverse employment action, and (3) similarly situated employees were treated differently. *Trujillo v. University of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Once plaintiff establishes the prima facie case, defendant has the burden to produce a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If defendant meets its burden, plaintiff must show that there is a genuine dispute of material fact as to whether the employer's legitimate nondiscriminatory reason is pretextual. *Id.*

#### 1. Denial of salary increase

■ Plaintiff has established a prima facie case of race discrimination with respect to defendant's denial of a salary increase. Plaintiff is African–American. Defendant's refusal of a salary increase qualifies as an adverse employment action. *See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir.1998) (adverse actions not limited to monetary losses in the form of wages or benefits); *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1381 (10th Cir.1994) (recognizing that unequal pay is an adverse action). Plaintiff offered evidence that four non-minority head restaurant managers (HRMs) under Michael Bates' supervision received salary increases for 1996.

■ Next, defendant has the burden to demonstrate a legitimate nondiscriminatory reason for the adverse action. Defendant demonstrated that plaintiff did not receive a salary increase because her overall work rating was "needs improvement," while the others given an increase were rated "good."

The burden thus reverts to plaintiff to show that defendant's legitimate nondiscriminatory reason is pretextual. Plaintiff offered evidence that defendant incorrectly calculated her turnover rate, which led to an incorrect "needs improvement" rating. Such evidence alone would not be sufficient to establish pretext. *See Doan v. Seagate Tech., Inc.*, 82 F.3d 974, 977–78 (10th Cir.1996) (courts should not question business decisions in the absence of evidence of impermissible motives), *cert. denied,* 519 U.S. 1056, 117 S.Ct. 684, 136 L.Ed.2d 608 (1997); *Fallis v. Kerr–McGee Corp.,* 944 F.2d 743, 747 (10th Cir. 1991) (plaintiff cannot prevail by merely challenging accuracy of an evaluation without additional evidence of discrimination). Plaintiff has offered additional evidence of pretext, in that the non-minority managers also underperformed on most or all of their goals and still received a "good" rating and a salary increase. Plaintiff has established a genuine issue of fact whether defendant's legitimate nondiscriminatory reason is pretextual. Accordingly, summary judgment is denied with respect to the Title VII race discrimination claim for denial of the salary increase.

### 2. Other actions

Plaintiff also alleges that defendant discriminated against her by refusing to support her discipline of insubordinate employees, by ordering plaintiff to leave work, and by calling her at home on her day off regarding product shortages in the restaurant. Plaintiff has met the first element of her prima facie case, but the court finds that she has failed to establish the second and third elements.

The Tenth Circuit Court of Appeals takes a case-by-case approach to determining whether there was an adverse employment action. *Sanchez,* at 531. Although the Tenth Circuit liberally defines "adverse employment action," the phrase does not include "a mere inconvenience or an alteration of job responsibilities." *Id.*

■ In support of her claim regarding employee discipline, plaintiff offered evidence that Bates required her to attend a meeting with him, Bobby Phelps, and plaintiff's two first assistant managers to discuss the relationship between plaintiff and her first assistants. The court finds that requiring plaintiff to attend the meeting was, at worst, a mere inconvenience or slight alteration in job responsibilities. *See id.; Fiscus v. Triumph Group Operations, Inc.,* 24 F.Supp.2d 1229, 1241 (D.Kan.1998) (employer's behavior not an adverse employment action just because employee dislikes it or disagrees with it). Moreover, it is undisputed that plaintiff instigated the meeting by expressing to Bates her concern regarding the employees and that, in the meeting, Bates directed the first assistants to follow plaintiff's directions. Thus, plaintiff has failed to show that the meeting was actually adverse or more than a mere inconvenience.

■ Plaintiff also offered evidence that Bates ordered plaintiff to leave work for the rest of the day after Bates found the restaurant in a state of confusion on May 10, 1996. Plaintiff, however, received full pay and benefits for the day and did not suffer any discipline. Bates' demand that plaintiff leave the workplace for the day does not constitute an adverse employment action. *See Sanchez,* at 532 (temporary transfer with no increase in duties or decrease in pay or benefits not an adverse employment action); *Copeland v. Sears, Roebuck & Co.,* 25 F.Supp.2d 412, 417 (S.D.N.Y.1998) (sending home for the day not an adverse employment action). To the extent that plaintiff argues that the incident was humiliating because it occurred in front of other employees, Bates' conduct was not an adverse employment action. *See Flaherty v. Gas Research Inst.,* 31 F.3d 451, 457 (7th Cir.1994) (humiliation or bruised ego alone insufficient to establish adverse employment action).

■ Finally, plaintiff offered evidence that Bates called her at home on her day off and told her to retrieve product stock and bring it into the restaurant. The court concludes that such a request is not an adverse employment action. *See Fiscus,* 24 F.Supp.2d at 1241. In any event, plaintiff admitted in her deposition that she was the acting-HRM at the time, and that when she was the HRM prior to her discrimination complaint, her supervisor regularly called her at home to

request items for the restaurant. Thus, Bates' act does not even rise to the level of an alteration of job duties, much less an adverse employment action.

Plaintiff also failed to establish that similarly situated managers were treated differently with regard to being required to attend meetings with assistants, being ordered to leave work, or being called at home about a product shortage. Accordingly, summary judgment is granted with respect to those claims.

**B. § 1981 Retaliation**

■ In the pretrial order, plaintiff alleges that defendant retaliated against her by refusing to reconsider her 1996 salary increase, by not supporting her efforts to discipline her employees, by ordering her to leave work, and by verbally harassing her about the shortage of products in the restaurant. The *McDonnell Douglas* burden-shifting framework applies to claims under 42 U.S.C. § 1981. *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1509 (10th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 626, 139 L.Ed.2d 607 (1997).

■ To establish a claim of retaliation, plaintiff must show that (1) she engaged in protected opposition to discrimination, (2) she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Jeffries v. Kansas*, 147 F.3d 1220, 1231 (10th Cir.1998). As previously stated, Bates' actions in requiring plaintiff to attend the meeting with her first assistants, sending plaintiff home for the day, and calling plaintiff at home to get product for the restaurant, did not constitute adverse employment actions.

■ Plaintiff's sole remaining retaliation claim is that defendant refused to reconsider the denial of her salary increase. That claim also fails. Here, the failure to reconsider is not an adverse employment action. Plaintiff has not shown that defendant generally gives its employees an opportunity to request reconsideration, or that defendant has any obligation to reconsider. Moreover, plaintiff has offered no evidence that defendant actually refused to reconsider her salary increase.

Accordingly, summary judgment is granted with respect to the § 1981 retaliation claim.

**C. § 1981 Constructive Discharge**

■ In the pretrial order, plaintiff alleges that all of defendant's previously mentioned allegedly retaliatory conduct created a work environment in which plaintiff felt compelled to resign. Constructive discharge claims may rely on retributive acts that follow protected opposition to discrimination. *Jeffries*, 147 F.3d at 1233. To establish a constructive discharge claim, plaintiff must show facts sufficient to demonstrate that a reasonable person would have viewed her working conditions as intolerable. *Id.*

■ Plaintiff relies only on the previous acts discussed—refusal to reconsider the salary increase, the incident in which Bates required plaintiff to attend the meeting with her first assistants, the incident in which Bates sent plaintiff home for the rest of the day, and the incident in which Bates called plaintiff at home to get product for the restaurant. These acts are insufficient to demonstrate that a reasonable person would consider the working conditions intolerable. Further, defendant has offered overwhelming evidence that plaintiff did not resign because she considered the working conditions intolerable. *See Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir.1997) (plaintiff must show that she had no other choice but to resign), *cert. denied*, —— U.S. ——, 118 S.Ct. 1515, 140 L.Ed.2d 669 (1998). Accordingly, summary judgment is granted with respect to plaintiff's constructive discharge claim.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion (Doc. 42) to supplement her opposition to defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that defendant's motion (Doc. 30) for summary judgment is denied with respect to plaintiff's Title VII race discrimination claim for denial of a salary increase, and granted in all other respects.

**IT IS SO ORDERED.**