Harry J. FREEMAN, Plaintiff,

v.

THE BURLINGTON NORTHERN AND SANTA FE RAILWAY as successor to the Atchison, Topeka & Santa Fe Railway Company, Defendant.

No. 97–4042–DES.

United States District Court,
D. Kansas.

May 28, 1999.

Alan V. Johnson, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for Harry James Freeman, plaintiff.

Harry James Freeman, Topeka, KS, pro se.

Larry G. Pepperdine, David R. Cooper, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Santa Fe Railway, defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

The above entitled matter is before the court on defendant's Motion for Summary Judgment (Doc. 42). Both parties have submitted briefs on this issue and the court is ready to rule.

## I. FACTUAL BACKGROUND

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981 in which the plaintiff, who is African–American, alleges the defendant discriminated against him on the basis of his race, and, thereafter, retaliated against him for filing and pursing an administrative charge of discrimination in violation of 42 U.S.C. § 1981.

The plaintiff was hired by the defendant's predecessor, Santa Fe Railway, in 1967 as a janitor. In 1977, the plaintiff was promoted to the exempt (nonunion and managerial) position of night janitorial supervisor. Starting at least in 1991 and continuing through 1994, the plaintiff received poor overall evaluations from both his supervisor, Harold Lutz, and his subordinates through reverse evaluations. On October 20, 1993, the plaintiff met with Mr. Lutz to discuss his deficient evaluations. During this meeting, Mr. Lutz informed the plaintiff that he would be receiving another poor evaluation, and that the upcoming deficient evaluation could result in the plaintiff's termination.

On October 25, 1993, the plaintiff filed an administrative charge with the Kansas Human Rights Commission (KHRC) alleging that the deficient evaluations and threatened termination were based upon the plaintiff's race. On November 11, 1993, the plaintiff received another deficient evaluation from Mr. Lutz. Contrary to the warning by Mr. Lutz, the plaintiff was not terminated as a result of this evaluation. Rather, it resulted in the plaintiff receiving no pay increase for 1994.

In 1995, the Santa Fe Railway merged with the Burlington Northern Railroads. The merger was effective September 1995. On November 8, 1995, the plaintiff's exempt night janitorial supervisor position was abolished. On November 14, 1995, a newly created PAD supervisor position (a position filled by a union employee but not necessarily upon the basis of seniority) was created and posted. The plaintiff was not informed of the new position, and, therefore, did not apply for the position. The position was filled by Mary Ann Garcia, a Hispanic female, on November 21, 1995. The plaintiff exercised his seniority rights under the union agreement and took a janitorial position on the day shift. The plaintiff is still employed in that position.

The plaintiff initiated this action forwarding one claim of illegal discrimination and three claims of illegal retaliation. The plaintiff claims that the defendant discriminated against him by failing to give him a pay increase in 1994 because of his race. The plaintiff claims the defendant retaliated against him for filing and pursuing administrative charges with the KHRC by (1) failing to give him a pay increase in 1994, (2) abolishing the night supervisory position, and (3) failing to offer him the newly created PAD position.

These facts are either uncontroverted, or are viewed in a light most favorable to the plaintiff, the non-moving party. Additional facts will be discussed below, when necessary.

## II. STANDARD FOR SUMMARY JUDGMENT

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed. R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evi-

dence. *See, e.g., U.S. v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. DISCUSSION

### A. Discriminatory Failure to Give a Pay Raise in 1994

The plaintiff's first complaint is that the defendant failed to give him a pay raise in 1994 based on the plaintiff's race. Title VII prohibits employers from discriminating against employees in employment decisions on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Although a plaintiff need not show that the employer's sole motive in making its decision was discriminatory in nature in order to prevail on a Title VII claim, he must show that "a discriminatory factor was 'also a reason for the employer's decision' and that it was 'the factor that made a difference.'" *Elmore v. Capstan, Inc.*, 58 F.3d 525, 530 (10th Cir.1995) (quoting *James v. Sears, Roebuck & Co., Inc.*, 21 F.3d 989, 992 (10th Cir.1994)).

The parties agree that there is no direct evidence of racial discrimination in this case. In civil rights cases where no direct evidence of discrimination is shown, the Tenth Circuit has adopted the burden-shifting scheme originally set forth *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to analyze the case.

To survive summary judgment, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Once the plaintiff has established a *prima facie* case, a rebuttable presumption of discrimi-

natory intent arises and the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* "[T]he defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *Flasher*, 986 F.2d at 1316 (citations omitted). However, the employer's reason for the adverse action "must be reasonably specific and clear." *Id.*

If the defendant employer meets this burden, the presumption of discrimination arising from the *prima facie* case "simply drops out of the picture." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "'At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief.'" *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 327 (10th Cir.1996) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995)). The plaintiff may establish pretext by showing "'that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence.'" *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir.1994) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The court must determine whether the evidence, interpreted in the light most favorable to the plaintiff, "could persuade a reasonable jury that the employer had discriminated against the plaintiff." *Jones v. Unisys Corp.*, 54 F.3d 624, 632 (10th Cir. 1995) (quoting *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 798 (10th Cir.1993)). "If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate." *Id.* "The plaintiff at all times bears the 'ultimate burden of per-

suasion.'" *See St. Mary's Honor Center,* 509 U.S. at 511, 113 S.Ct. 2742 (citations omitted).

In order to establish a *prima facie* case, the plaintiff must show the following elements:

(1) he is a member of a racial minority;

(2) his job performance was satisfactory;

(3) he was adversely effected by the defendant's employment decision;

(4) he was treated differently than similarly situated non-minority employees;

*Walker v. Runyon,* 979 F.Supp. 1363, 1367–68 (D.Kan.1997). The defendant concedes that the first and third elements are met in this case. The plaintiff is African–American and he was adversely affected by the defendant's decision not to award a salary increase. However, the defendant contends that the plaintiff cannot show that he was performing satisfactorily or that he was treated differently than similarly situated non-minority employees.

The court finds that a genuine issue of material fact exists as to the issue of whether the plaintiff was performing satisfactorily. Although it is undisputed that the plaintiff received an overall evaluation rating of "deficient" on his review by Harold Lutz, the plaintiff questions whether the "deficient" rating was appropriate. The review completed in November 1993 shows that the plaintiff received either satisfactory or above average ratings in five of the eight categories on the report. The plaintiff received deficient ratings on the three remaining individual categories and in the overall category. A reasonable juror could conclude that the plaintiff was performing satisfactorily at his job if he had received good job ratings in over half of the evaluation categories. It is reasonable to conclude that the overall rating of deficient was based upon a racial bias given the ratings the plaintiff received in five of the individual categories. The court finds that the plaintiff has shown, for the purposes of this motion, that he was performing satisfactorily when he was not given a pay raise in 1994.

The final element the plaintiff must show in his *prima facie* case is that he was treated differently than similarly situated non-minority employees. The plaintiff claims to have met this element by stating that the plaintiff "was the only exempt employee who was supervised by Lutz, and who received an overall performance evaluation of 'deficient' in 1993." The plaintiff also states that "this overall evaluation directly resulted in plaintiff not receiving a pay raise in 1994."

■ The court finds that the plaintiff has failed to meet his burden of producing evidence supporting the contention that he was treated differently than similarly situated non-minority employees. As stated above, the plaintiff must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548.

The plaintiff cites to statement of fact No. 74, which is contained in the Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. 43), and statement of fact No. 144, which is contained in the Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 46), as the only support for showing that the plaintiff has met his burden of showing a *prima facie* case. When viewed in a light most favorable to the plaintiff, these statements of fact establish two things: (1) that the "[p]laintiff was the only employee to whom Mr. Lutz assigned an overall performance rating of deficient in January of 1993," and (2) that "[Mr.] Lutz admitted that if he had given plaintiff an evaluation higher than 'deficient' in November of 1993, then plaintiff

would have received a salary increase for 1994."

The plaintiff acknowledges that the November 1993 evaluation resulted in the decision not to award the plaintiff a pay increase for 1994. However, the plaintiff has made no showing that he was treated any differently than any other similarly situated non-minority on that evaluation. The plaintiff does make it a point to show that he was the only exempt employee under Mr. Lutz to receive a "deficient" rating in January 1993. However, the court fails to see how the January evaluation is relevant to whether the plaintiff was treated differently than non-minority employees in the November evaluations. If it was the November evaluation which gave rise to this claim, then the plaintiff must show that he was treated differently than similarly situated non-minority employees in the November evaluation. The plaintiff has produced no evidence by way of affidavits, depositions, answers to interrogatories, or admissions on file to show this. Therefore, the plaintiff has failed to establish a *prima facie* case of discrimination and summary judgment is proper on this claim.

### B. Plaintiff's Retaliation Claims

██ The plaintiff contends that the defendant retaliated against him on three different occasions for filing administrative charges with the KHRC. These alleged retaliatory acts include failing to give the plaintiff a pay raise in 1994, abolishing the plaintiff's position in 1995, and failing to inform the plaintiff of the PAD position which was created in 1995. Because there is no direct evidence of a retaliatory motive on any of these claims, they must be analyzed under the *McDonnell Douglas* burden-shifting analysis. *See Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir.1996). As an initial step in the analysis of each of these claims, the plaintiff is required to establish the following elements of a *prima facie* case:

(1) protected opposition to Title VII discrimination or participation in a Title VII proceeding; (2) adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection between such activity and the employer's adverse action.

*Id.* The defendant concedes that the first two elements have been met on each of these claims. The plaintiff's filing of charges with the KHRC is protected activity under Title VII and there was adverse employment action by the defendant following this activity—the failure to give a pay raise, the abolition of the plaintiff's position, and the failure to notify the plaintiff of the newly created PAD position. However, the defendant contends that the plaintiff is unable to meet the third element of these claims, a causal connection between the protected activity and the adverse employment action.

██ In the absence of any direct proof of a causal connection, the plaintiff can create an inference of a causal connection from the temporal proximity of the events. An inference based on timing "can only be made, however, where 'close temporal proximity' exists between the bringing of the charges and the subsequent adverse action." *Candelaria v. E G & G Energy Measurements, Inc.*, 33 F.3d 1259, 1262 (10th Cir.1994) (quoting *Smith v. Maschner*, 899 F.2d 940, 948–49 (10th Cir. 1990)).

#### 1. Retaliatory Failure to Give a Pay Raise in 1994

The plaintiff must produce some evidence which demonstrates that the defendant's decision to not give the plaintiff a pay raise in 1994 was a result of the plaintiff's decision to file a charge of discrimination with the KHRC. The close temporal proximity of the plaintiff's protected actions and the adverse employment actions by the defendant, approximately two weeks to one month, may give rise to an inference of a causal connection. However, as will be discussed below, such an inference is clearly negated by the evidence presented in this case. The evi-

dence in this case simply does not support a claim of retaliation in regard to the decision not to award the plaintiff a pay raise in 1994.

■ The facts, viewed in a light most favorable to the plaintiff, show that no retaliation took place in this claim. The plaintiff admits that he met with Mr. Lutz on October 20, 1993, to discuss the plaintiff's evaluation. The plaintiff was told at that meeting that he would be receiving another poor evaluation and that this upcoming evaluation could result in his termination. The plaintiff filed his charge of discrimination with the KHRC on October 25, 1993. The plaintiff did receive another poor evaluation, but was not terminated. Rather, he was given a less severe punishment of not receiving a pay increase for 1994.

In the Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. 43), the defendant states, "Because he knew he was going to receive another poor evaluation, plaintiff took action by filing a charge of discrimination with the Kansas Human Rights Commission on October 25, 1993." The plaintiff does not controvert this fact, but does supplement it by stating that he also filed the charge because of the evaluation he received on January 15, 1993.

The adverse action taken by the defendant in this claim is the failure to give a pay raise. It is clear from the record that this decision was made in direct response to the deficient rating the plaintiff received in his review. The plaintiff essentially admits that the adverse employment decision had been made prior to the filing of the discrimination charges with the KHRC. In fact, the plaintiff filed his charges with the KHRC, at least in part, in response to learning about the upcoming adverse employment action. The court fails to see how any reasonable juror could determine that the adverse employment action taken by the defendant could have been in retaliation for the filing of the KHRC charges. The plaintiff acknowledges that the decision had been made and conveyed to him

before the charges were filed. In fact, the evidence shows that the plaintiff may have been treated favorably as a result of filing the charges with the KHRC, as evidenced by his not being terminated as a result of the poor evaluation.

The plaintiff has not produced any evidence which tends to show that the decision not to give him a pay raise in 1994 was done in retaliation for the filing of charges against the defendant with the KHRC. Any inference of a causal connection created by the temporal proximity of the plaintiff's protected activity and the defendant's employment decision is completely negated by the plaintiff's own admissions of the timing of these events. The plaintiff has admitted that the decision to give him a poor evaluation, which was the direct cause of the failure to receive a pay raise, had been made prior to the charges being filed. The lack of any credible evidence to support this charge makes summary judgment appropriate in favor of the defendant on this claim.

### 2. Retaliatory Abolishment of Plaintiff's Exempt Position

The plaintiff claims that the decision to abolish his position was made in retaliation for his filing administrative charges with the KHRC. The defendant contends that the plaintiff is unable to establish a *prima facie* case of retaliation because he is unable to show any causal connection between his protected activity and the adverse employment decision. As discussed above, an inference of a causal connection can be created by showing a close temporal proximity between the protected activity and the employment decision. *See Candelaria,* 33 F.3d at 1262. In the absence of such an inference, summary judgment is appropriate unless the plaintiff can come forward with additional evidence to support the claim of retaliation.

The defendant contends that the period of time between the plaintiff's filing of the charges with the KHRC and the abolition of his position is too great to create any inference of a causal connection. The defendant notes that more than two years

elapsed between the time of the filing of the charges with the KHRC and abolition of the plaintiff's position. The plaintiff argues that the protected activity goes well beyond the filing of the administrative charges on October 25, 1993, and includes pursuing the charges with the KHRC until the "no probable cause" ruling was handed down on October 15, 1995. The plaintiff argues that the relevant time period that should be examined by the court is the four week time period between the conclusion of the KHRC's investigation and the termination of the plaintiff's position. The plaintiff has not provided any relevant law to support this theory.

■ The issue before the court is what constitutes "protected activity" for the purpose of determining the time frame at which the court must look to determine whether an inference of causal connection exists in this case. The relevant time frame for analyzing whether an inference of retaliation can be created must be from the time the plaintiff filed the charges with the KHRC to the time of the abolition of his position. The reason for this is two-fold. First, this inference is given to plaintiffs who are trying to show a causal connection between engaging in protected activity and subsequent adverse employment actions. There is a much stronger inference that an employer is going to retaliate against an employee when a plaintiff has recently filed charges with an administrative agency than after the administrative agency has found that no probable cause exists to pursue the plaintiff's claim. Second, if the court were to extend the "protected activity," as that term is used in this analysis, to include not only the filing of charges but also "pursuing" those charges until the agency has made a ruling, the inference would become overly broad and subject to abuse. This theory would bring a much wider range of employment activities under an inference of retaliation than was intended by the courts when creating this avenue of proof for plaintiffs. For example, applying the theory to this case, any employment action taken with a two-year period following the filing of charges with the KHRC would be given an inference of retaliatory motive because the plaintiff was still engaging in protected activity of pursuing his charges with the KHRC. The court finds this is simply not what was intended by the decisions allowing a plaintiff to use such an inference to establish a *prima facie* case.

■ The court finds that there is no inference of a causal connection that can be drawn between the plaintiff's protected activity and the decision to abolish the plaintiff's position. More than two years elapsed between the filing of the plaintiff's charges with the KHRC and the action taken by the defendant. This is clearly too long of a time to allow the court to draw any type of inference that the action taken by the defendant was connected to the plaintiff's protected activity. Because the plaintiff has not produced any evidence of a causal connection, he has not established a *prima facie* case and summary judgment is proper.

### 3. Retaliatory Failure to Inform Plaintiff of the PAD Position

The claim for retaliatory failure to inform the plaintiff of the PAD position is deficient for the same reason as the claim for retaliatory abolishment of the plaintiff's exempt position. The plaintiff must produce some evidence that shows the failure to inform him of this newly created position was done in retaliation for his filing of charges with the KHRC. The time elapsed between the two events is too long to allow any inference of a causal connection. The plaintiff has not produced any additional evidence showing a causal connection between the protected activity and the adverse employment action, which is a required element of the plaintiff's *prima facie* case. Because the plaintiff cannot meet his burden of establishing a *prima facie* case, summary judgment is proper on this claim.

### IV. CONCLUSION

The court finds that the defendant is entitled to summary judgment on all of the

plaintiff's claims. In the plaintiff's claim of discriminatory failure to give a pay raise in 1994, the plaintiff failed to produce any evidence that he was treated differently than similarly situated non-minority employees at the time the employment decision was made. The evidence surrounding the plaintiff's retaliatory failure to give a pay raise in 1994 clearly shows that the decision to give the plaintiff a poor evaluation, which directly led to the decision not to award a pay raise, was made and communicated to the plaintiff prior to the filing of the administrative charges with the KHRC. The two remaining retaliation claims lack any showing of a causal connection between the filing of the charges with the KHRC and the adverse action taken by the defendant.

**IT IS THEREFORE BY THIS COURT ORDERED** that the Defendant's Motion for Summary Judgment (Doc. 42) is granted as to all claims.