**Ramona L. ROBINSON, Plaintiff,**

v.

**RHODES FURNITURE, INC., Defendant.**

No. Civ.A. 99–2005–GTV.

United States District Court, D. Kansas.

March 13, 2000.

---

Aunna L. Peoples, Peoples Law Office, Kansas City, MO, for plaintiff.

Ramona L. Robinson, Kansas City, KS, pro se.

Mark D. Hinderks, Stinson, Mag & Fizzell, P.C., Leawood, KS, Patricia A. Konopka, Stinson, Mag & Fizzell, P.C., Kansas City, MO, Jonathan P. Harmon, Laura Clark McCoy, Gary S. Marshall, McGuire, Woods, Battle & Boothe, L.L.P., Richmond, VA, for Rhodes Furniture, defendant.

## MEMORANDUM AND ORDER

VanBEBBER, District Judge.

Plaintiff Ramona Robinson brings this action alleging that defendant Rhodes Furniture, Inc. discriminated against her based on her race and sex, retaliated against her after she opposed the allegedly discriminatory behavior, and constructively discharged her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Kansas Act Against Discrimination, K.S.A. 44–1001 *et seq.* ("KAAD"). The matter is before the court on defendant's motion for summary judgment (Doc. 42). For the reasons set forth below, defendant's motion is granted in part and denied in part.

### I. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on the evidence submitted with the summary judgment papers and viewed in a light most favorable to the nonmoving party. Immaterial facts and facts not properly supported by the record are omitted.

Defendant is a retail furniture company that operates several stores in the Kansas City metropolitan area. Plaintiff, an African–American female, began working as a part-time cashier at the largest of defendant's Kansas City stores, located in Olathe, Kansas, on December 1, 1996. As a part-time cashier, plaintiff's starting salary was $6.50 per hour, and she worked 30 to 35 hours per week.

In late 1997, plaintiff expressed an interest in the recently vacated assistant office manager position at the Olathe store. Paul Held, manager of the Olathe store, and Bob Herman, the Kansas City area operations manager for defendant, determined that plaintiff had performed well as a cashier and promoted her to the vacant position. Plaintiff's promotion, which took effect on January 1, 1998, increased her salary to $18,000 per year. Plaintiff's primary responsibility as assistant office manager was to train for the position of office manager. Plaintiff worked between 50 and 60 hours per week during her two month tenure as assistant office manager. According to an Equal Employment Opportunity Commission ("EEOC") affidavit filed by Held, plaintiff's performance as assistant office manager was, as far as he knew, excellent.

On February 28, 1998, Held and Herman appointed plaintiff acting office manager of the Olathe store after the former office manager resigned. Because plaintiff had only been an assistant office manager for two months prior to this point, Held and Herman assigned another employee to assist plaintiff in her duties as acting office manager. Despite such assistance, a shortage of staff at the Olathe store forced plaintiff to work between 60 and 70 hours per week. Although plaintiff attempted to train her employees to assume more responsibilities, the staffing problem ultimately forced plaintiff to perform many of those tasks herself.

Plaintiff served as acting office manager for approximately two months. At the end of that period, however, Herman bypassed plaintiff for a permanent promotion to the position and instead promoted Derrick Sherer, a white male previously employed as a clerk in defendant's customer service department. Sherer assumed the Olathe store's office manager position in April

1998, at which time plaintiff resumed her assistant office manager duties.

Plaintiff did not remain in the assistant office manager position long. Although the precise time frame is unclear from the record, Herman demoted plaintiff from assistant office manager back to a cashier position within several weeks of denying her the promotion to office manager. Herman replaced plaintiff with Nicky Perkins, a young, white female, who, like Sherer, was previously employed in defendant's customer service department. Plaintiff's new rate of pay as a cashier was $8.50 per hour.

Plaintiff contends that prior to the demotion, neither Held nor Herman ever informed her of any performance problems that they believed she was having as assistant office manager or acting office manager. Plaintiff testified in deposition that when she asked Herman why he was demoting her, he pointed to a company promotional poster, which depicted a young, white woman standing in front of a BMW automobile, and told plaintiff that she did not fit in with the company's new promotional campaign. The new campaign, which was apparently launched after Herman and Held appointed plaintiff acting office manager in February 1998, targeted selling high-end furniture to young, affluent, white females. Plaintiff contends that she was not made aware of any performance problems until she read defendant's response to the charge of race discrimination that she had filed in May 1998 with the Kansas Human Rights Commission ("KHRC") and the EEOC. In the response, Herman justified the company's actions against plaintiff by claiming that plaintiff's performance as assistant office manager and acting office manager indicated that she was not a good choice for a managerial position. Specifically, Herman claimed that plaintiff was unable to manage her workload, did not delegate well, and was overly-stressed and short-tempered with employees. Accordingly, Herman stated that he believed plaintiff would perform better and be happier in a cashier position.

Plaintiff also contends that, after she filed her KHRC/EEOC charge, she noticed a difference in the treatment she received from defendant. First, in the Fall of 1998, plaintiff contacted Ann Scott, who had replaced Herman as the Kansas City area operations manager, about plaintiff's annual raise. According to defendant's policy, raises were to be awarded on an annual basis dating from either the employee's anniversary date of employment or the date of the employee's last raise. Scott refused to award plaintiff a raise on her anniversary date, claiming that the salary of $8.50 per hour granted to plaintiff upon her demotion to cashier actually constituted a raise in salary from the amount plaintiff was earning as an assistant office manager.[1] Accordingly, Scott informed plaintiff that her next raise would not be given until May of the following year.

Second, Held allegedly promised the cashiers working at the Olathe store a steak dinner if they met certain performance goals. Plaintiff and another cashier met their goals, but Held did not take plaintiff to dinner. Instead, he took only the other cashier.[2]

Third, defendant allegedly denied plaintiff the option of working overtime as a cashier, even though defendant allowed at least two other cashiers to do so.

Finally, on November 22, 1998, plaintiff paged Held for assistance with a customer. When Held failed to answer the page, plaintiff paged a warehouse employee to help her. The second page also went un-

---

1. Plaintiff earned $18,000 per year as assistant office manager. According to defendant, plaintiff would be making $17,680 per year as a cashier, with an opportunity to earn a bonus of $50 per month. Plaintiff contends that she never received any of the bonuses.

2. Plaintiff also contends that Held frequently took other employees out to lunch but never invited plaintiff to go.

answered. When plaintiff later asked Held why he ignored her page, he told her that he was busy with something else. Plaintiff resigned that same day.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. See *id.* Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. See *id.* at 325, 106 S.Ct. 2548. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. See *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.

*See id.* The court must consider the record in the light most favorable to the nonmoving party. See *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984).

## III. DISCUSSION

### A. Sex Discrimination Claim

Defendant argues that plaintiff's claim for sex discrimination is procedurally barred under both Title VII and the KAAD because plaintiff failed to exhaust her administrative remedies before filing suit. Plaintiff did not respond to defendant's argument. The court agrees with defendant and grants defendant's motion for summary judgment as to plaintiff's sex discrimination claim.

■ It is well-settled that a plaintiff must exhaust her administrative remedies prior to filing suit under Title VII or the KAAD. See *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir.1997). "As a general rule, where charges are not brought before the EEOC, federal courts are without jurisdiction to hear them." *Martin v. Nannie & The Newborns, Inc.*, 3 F.3d 1410, 1416 n. 7 (10th Cir.1993). When a defendant employer specifically denies that a plaintiff has exhausted her administrative remedies, the burden of proof rests with the plaintiff to show that she has satisfied the requirement. See *Morris v. Kansas Dep't of Revenue*, 849 F.Supp. 1421, 1427 (D.Kan.1994).

■ In this case, plaintiff filed a charge of discrimination with the KHRC and the EEOC, alleging that defendant unlawfully discriminated against her because of her race. Plaintiff's charge did not include any allegation that defendant's discrimination was also based on her sex. In light of her failure to address the issue, the court determines that plaintiff has failed to carry the burden of proof and establish that she has satisfied the necessary exhaustion requirements. The court, therefore, concludes that it is without jurisdiction to hear plaintiff's sex discrimination claim, and, ac-

cordingly, grants defendant's motion for summary judgment as to that claim.[3]

## B. Race Discrimination Claim

Plaintiff claims that defendant's decision to deny her a promotion and its subsequent decision to demote her were the result of defendant's race-based discrimination in violation of Title VII, Section 1981, and the KAAD. The court applies the *McDonnell Douglas*[4] burden-shifting analysis to claims of intentional discrimination brought under Title VII, Section 1981, or the KAAD if, as here, there is no direct evidence of discrimination. Under the *McDonnell Douglas* framework, the plaintiff must begin by establishing a prima facie case of discrimination. 411 U.S. at 802, 93 S.Ct. 1817. The burden of establishing a prima facie case is not an onerous one. *See MacDonald v. Eastern Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1119 (10th Cir.1991) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If plaintiff presents a prima facie case of discrimination, the burden shifts to the defendant to provide evidence suggesting a legitimate, non-discriminatory reason for the adverse employment action taken against plaintiff. *See McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817. "At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995).

"Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (internal citations and quotations omitted). "If the plaintiff succeeds in showing a prima facie case and presents evidence that the defendant's proffered reason ... was pretextual—i.e. unworthy of belief, the plaintiff can withstand a summary judgment motion and is entitled to go to trial." *Randle,* 69 F.3d at 451.

### 1. Failure to Promote

To establish a prima facie case of race discrimination due to failure to promote, plaintiff must show that she "(1) belongs to a minority group; (2) was qualified for the promotion; (3) was not promoted; and (4) that the position remained open or was filled with a non-minority." *Simms v. Oklahoma,* 165 F.3d 1321, 1328 (10th Cir. 1999) (quoting *Reynolds v. School Dist. No. 1, Denver, Colo.,* 69 F.3d 1523, 1534 (10th Cir.1995)). Defendant contests only the second prong of plaintiff's prima facie case, arguing that plaintiff was not qualified for the office manager position because her performance as acting office manager was unacceptable. However, the court will only consider an employer's reasons for an adverse employment action pursuant to the court's inquiry into wheth-

---

**3.** The court notes that a suit brought under Title VII or the KAAD may include allegations of discrimination not listed in the EEOC or KHRC charge if the allegations are reasonably related to the discrimination actually complained of in the charge. *See Aramburu,* 112 F.3d at 1409. Although plaintiff did not raise this issue, the court has reviewed the record and determines that plaintiff's sex discrimination claim is not reasonably related to the allegations of race discrimination listed in her EEOC/KHRC charge. *See Williams v. Kansas Gas & Elec. Co.,* 805 F.Supp. 890, 900 (D.Kan.1992) (concluding that a plaintiff's claim of sex discrimination is not reasonably

related to a charge of race discrimination for administrative exhaustion purposes).

**4.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The court applies the same allocation, burden and order of proof used in Title VII discrimination claims to analyze both Section 1981 discrimination claims and discrimination claims brought under the KAAD. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (Section 1981); *Durham v. Xerox Corp.,* 18 F.3d 836, 839 (10th Cir.1994) (same); *Aramburu,* 112 F.3d at 1403 n. 3 (KAAD).

**1168**

er those reasons are legitimate or are merely pretext for discrimination. *See Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1469–70 (10th Cir.1992). Because the burden of establishing a prima facie case is not an onerous one, plaintiff may proceed by presenting credible evidence, including her own testimony, that she was qualified for the position sought, even if that evidence is disputed by her employer. *See id.* at 1470 (quoting *MacDonald*, 941 F.2d at 1121). Plaintiff has carried that burden through her own deposition testimony, as well as through documentary evidence that the Olathe store manager, Paul Held, indicated that plaintiff's performance as an assistant manager was excellent.

■ Defendant has met its burden of suggesting a legitimate, nondiscriminatory reason for failing to promote plaintiff by presenting evidence that plaintiff's management skills were shown to be lacking during her tenure as acting office manager. The burden thus reverts to plaintiff to show that defendant's legitimate, nondiscriminatory reason is pretextual. Plaintiff's testimony in deposition that Bob Herman explained the reason for her demotion by pointing to the company promotional poster of a young, white female standing in front of a BMW automobile, and telling plaintiff that she did not conform to the company's new campaign image, is sufficient to raise the inference of pretext.[5] Therefore, the court concludes that plaintiff has established that a genuine issue of material fact exists as to whether defendant's proffered legitimate, nondiscriminatory reason for failing to promote her was pretextual. The court denies summary judgment with respect to plaintiff's claim of racially discriminatory failure to promote.

### 2. Demotion

■ To establish a prima facie case of race discrimination due to a demotion, plaintiff must show that: (1) she belongs to

a minority group; (2) she was performing her work satisfactorily; (3) she was demoted; and (4) her position was filled by a non-minority. *See Schloesser v. Kansas Dep't of Health & Env't*, 766 F.Supp. 984, 991 (D.Kan.1991), *rev'd on other grounds*, 991 F.2d 806 (10th Cir.1993). Again, defendant contests only the second prong of plaintiff's prima facie case, arguing that plaintiff was not satisfactorily performing her work as an assistant office manager. However, the court finds that plaintiff has established a prima facie case through her own deposition testimony as well as through Held's EEOC affidavit indicating that plaintiff's performance as assistant office manager was excellent.

■ Defendant has carried its burden of suggesting a legitimate, nondiscriminatory reason for demoting plaintiff by presenting evidence that plaintiff's performance as assistant office manager and acting office manager indicated that she was not suited for a managerial position. Again, however, plaintiff's testimony in deposition that Herman explained the reason for her demotion by pointing to the promotional poster and suggesting that plaintiff did not fit the company image is sufficient to raise an inference of pretext. In addition, plaintiff offered evidence that neither Herman nor Held ever informed plaintiff of any performance problems as assistant office manager or acting office manager prior to her demotion. As a result, the court concludes that plaintiff has established that a genuine issue of material fact exists as to whether defendant's proffered legitimate, nondiscriminatory reason for demoting her was pretextual. The court denies summary judgment with respect to plaintiff's claim of racially discriminatory demotion.

### C. Retaliation Claim

Plaintiff claims that, after she filed her charge of discrimination with the KHRC

---

5. The court recognizes that this incident occurred while Herman was discussing plaintiff's demotion with her. Its close temporal proximity to Herman's decision to not promote plaintiff, however, makes it sufficient to constitute evidence of pretext for plaintiff's failure to promote claim as well.

and the EEOC, defendant retaliated against her in violation of Title VII, Section 1981, and the KAAD by denying her an annual pay raise and by denying her the opportunity to work overtime. The court applies the *McDonnell Douglas* burden-shifting analysis to claims of retaliation if, as here, there is no direct evidence of retaliatory motive on defendant's part. *See Freeman v. Burlington N. & Santa Fe Ry.*, 47 F.Supp.2d 1308, 1313 (D.Kan.1999) (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir.1996)).

■ To present a prima facie case of retaliation, plaintiff must prove that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the employment action. *See Sauers v. Salt Lake· County*, 1 F.3d 1122, 1128 (10th Cir.1993). "In the absence of any direct proof of a causal connection, the plaintiff can create an inference of a causal connection from the temporal proximity of the events. An inference based on timing 'can only be made, however, where "close temporal proximity" exists between the bringing of the charges and the subsequent adverse action.'" *Freeman*, 47 F.Supp.2d at 1313 (quoting *Candelaria v. EG & G Energy Measurements, Inc.*, 33 F.3d 1259, 1262 (10th Cir.1994) (further quotations omitted)).

■ Plaintiff engaged in protected activity when she filed her charge of discrimination with the KHRC and the EEOC in May 1998. Defendant's denial of an annual pay raise and its refusal to allow plaintiff the opportunity to earn overtime pay when other similarly-situated employees were given such an opportunity constitute adverse employment actions. *See Colter v. Dobski & Assocs., Inc.*, 35 F.Supp.2d 824, 829 (D.Kan.1999) (citing *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) and *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1381 (10th Cir.1994)). Plaintiff testified in deposition that over the next several months, when management positions became open, she repeatedly asked to be promoted to those positions but was denied each time. Plaintiff also testified that Held treated her poorly after she filed the charge; for example, he never invited her to lunch, as he did the other employees. Because these actions occurred in the weeks and months immediately following plaintiff's filing the EEOC and KHRC charges, the causal connection between the adverse actions and the protected activity is satisfied. Plaintiff has established a prima facie case of retaliation.

■ Defendant responds that plaintiff was not due to receive an annual raise until May 1999 because she had been given a raise upon her demotion to cashier, and that plaintiff was not permitted to work overtime because none of its cashiers were. However, plaintiff has offered evidence that she in fact did not receive a raise in pay, and that other similarly-situated employees were permitted to work overtime hours when she was denied such an opportunity, thus raising the inference that defendant's reasons are pretextual. The court concludes that plaintiff has created a genuine issue of material fact as to whether defendant retaliated against plaintiff for filing a charge of discrimination, and denies summary judgment with respect to plaintiff's retaliation claim.

### D. Constructive Discharge

Plaintiff's final contention is that defendant constructively discharged her by fostering such an intolerable working environment that she felt compelled to resign. To support her constructive discharge claim, plaintiff points to the following incidents: (1) defendant's denial of plaintiff's annual raise; (2) Held's failure to reward plaintiff with the steak dinner for meeting her performance goal as a cashier; (3) Held's failure to take plaintiff out to lunch when he did so with other employees; (4) defendant's refusal to allow plaintiff the opportunity to work overtime; and (5) Held's failure to assist plaintiff with a customer when she paged him on her last day of work.

 "To establish a claim of constructive discharge under Title VII, an employee must demonstrate that the employer's discriminatory conduct produced working conditions that a reasonable person would view as intolerable." *Williams v. Kansas Gas & Elec. Co.*, 805 F.Supp. 890, 904 (D.Kan.1992) (citing *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1386 (10th Cir.1991) (further citations omitted)). "The conditions of employment must be objectively intolerable; the 'plaintiff's subjective views of the situation are irrelevant.'" *Sanchez*, 164 F.3d at 534 (quoting *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir.1997) (further citation omitted)). The court concludes that a reasonable trier of fact could find plaintiff's environment at the Olathe store to be intolerable. Because defendant treated plaintiff differently by denying her certain opportunities and benefits that it afforded to other employees—in particular, by denying her an annual raise and the opportunity to work overtime—plaintiff might reasonably have felt "compelled to resign." *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir.1986). Moreover, Held's refusal to respond to plaintiff's pages on the day of plaintiff's resignation further supports the court's conclusion. The court denies summary judgment with respect to plaintiff's constructive discharge claim.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 42) is granted with respect to plaintiff's Title VII and KAAD sex discrimination claims, and denied with respect to all other claims.

Copies of this order shall be mailed to counsel of record.

**IT IS SO ORDERED.**